**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| William Slone, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:20-cv-00204 |
| | ) | |
| vs. | ) | Judge Michael R. Barrett |
| | ) | |
| Voorhis, Slone, Welsh, Crossland | ) | |
| Architects, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION & ORDER**

This matter is before the Court on the Motion for Summary Judgment filed by Defendant Voorhis, Slone, Welsh, Crossland Architects, Inc. (Doc. 31). Plaintiff William Slone filed a Response in Opposition (Doc. 36),[1] and Defendant filed a Reply (Doc. 38).

I. **BACKGROUND**[2]

**The parties.** Plaintiff began working for Defendant in 1984 as a non-professional who cleaned the office, and he worked in this custodial position through 1995. (Doc. 22 William Slone Dep. PageID 128). Starting in 1992, *i.e.*, the start of Plaintiff's studies at the University of Cincinnati's six-year architectural program, Plaintiff served as a summer intern and as a fall or spring semester cooperative education experience employee, also known as "co-op employee," at Defendant at various times between 1992 and 1998. (*Id.* PageID 128-33). In September 1998, after Plaintiff's graduation, he began working for

---

[1] Plaintiff's request for oral argument is denied, as the Court does not deem it essential to the fair resolution of this matter. (Doc. 36 PageID 1987); *see* S.D. Ohio Civ. R. 7.1(b)(2).

[2] Defendant cites deposition transcripts' page numbers and line numbers instead of the CM/ECF document's document numbers and PageID numbers throughout its briefing. (Docs. 31, 36). *But see* STANDING ORDER ON CIVIL PROCEDURES, Michael R. Barrett, I.F. Citation to the CM/ECF document numbers and PageID numbers is preferable in all future filings before the Court.

Defendant full-time, as a graduate architect, and did so until 2001. (*Id.* PageID 108-109, 134-35). In 2001, Plaintiff voluntarily left Defendant to study for and take various certification examinations to become a registered architect, *i.e.*, licensed architect, and do so without the pressure of studying while also working full-time. (*Id.* PageID 108-09, 137-38). Plaintiff passed each of the certification examinations that same year and his license became effective on January 1, 2002. (*Id.* PageID 109). He then worked at various architectural firms until he eventually reapplied to work for Defendant in November 2014. (*Id.* PageID 110-128, 146). Defendant hired Plaintiff in November 2014 on a temporary basis and then hired him in a full-time position in March 2015. (Doc. 24 Christopher Dumford[3] Dep. PageID 845). Defendant terminated Plaintiff's employment on September 6, 2018, via written letter, "for unacceptable job performance, including" a "failure to" "build[] relationships with fellow employees". (*Id.* Ex. 12 PageID 988).

Defendant is a full-service architectural firm based in Mason, Ohio that specializes in public buildings, particularly in the primary and secondary educational building market. (Doc. 24 Dumford Dep. PageID 827-28). Plaintiff's father, Robert Slone, was a partner at Defendant from, at least, 1984 to, at least, 2018. *See, e.g.*, (Doc. 22 William Slone Dep. PageID 128-29, 132, 135); (Doc. 24 Dumford Dep. PageID 821-22). Defendant's partners own the firm; however, newer associates recently obtained small ownership shares. (Doc. 24 Dumford Dep. PageID 822-23). Defendant currently has twenty employees, including six partners. (*Id.* PageID 823, 828).

**1998 car accident.** In May 1998, Plaintiff was a passenger in a car that was involved in a serious car accident. (Doc. 22 Slone Dep. PageID 134). Plaintiff suffered

---

[3] Christopher Dumford is a registered architect who began working at Defendant in 1995 and became a partner in 2008. (Doc. 24 Dumford Dep. PageID 819-23).

significant injuries as a result of this accident, including double vision, broken bones, minor burns, a partially severed nerve that resulted in partial paralysis of his left arm, and a head injury that resulted in a two-week coma. (*Id.* PageID 134-35, 138-41).

When Plaintiff began working for Defendant in September 1998 as a graduate architect, he was still in significant recovery from the accident. (*Id.* PageID 150-52). Many of Defendant's employees knew of Plaintiff's accident at the time that it occurred. *See, e.g.*, (Doc. 23 Brian Gilliland[4] Dep. PageID 726); (Doc. 24 Dumford Dep. PageID 829); (Doc. 27 Jim Voorhis[5] Dep. PageID 1176-77); (Doc. 28 Paul Brokamp[6] Dep. PageID 1245). When Plaintiff reapplied to work for Defendant in November 2014, those same co-workers were still working for Defendant. *See, e.g.*, (Doc. 23 Gilliland Dep. PageID 722-23) (Gilliland has worked continuously at Defendant since 1992); (Doc. 24 Dumford Dep. PageID 822); (Dumford has worked continuously at Defendant since 1995); (Doc. 27 Voorhis Dep. PageID 1172); (Voorhis has worked continuously at Defendant since 1985); (Doc. 28 Brokamp Dep. PageID 1241) (Brokamp worked continuously at Defendant since the 1980's through 2020).

**January 2018.** Defendant gave all of its employees their respective 2017 performance reviews—made up of an in-person meeting, written self-evaluation, and preliminary and final written evaluation by Defendant—in January 2018. (Doc. 24

---

[4] Brian Gilliland has a bachelor's degree in architectural engineering technology from the University of Cincinnati and began working for Defendant in 1992 and became a partner in 2008. (Doc. 23 Gilliland Dep. PageID 721). He currently manages all of Defendant's office technology and serves as the treasurer. (*Id.* PageID 720-22, 724).

[5] Jim Voorhis is a registered architect who began working for Defendant in 1985, is a partner, and currently is the President of Defendant. (Doc. 27 Voorhis Dep. PageID 1171-73).

[6] Paul Brokamp is a registered architect who began working for Defendant in the early 1980s, became a partner sometime in the 1990s, and retired in 2020. (Doc. 28 Brokamp Dep. PageID 1238-39, 1241).

Dumford Dep. PageID 76-77). Messrs. Dumford, Crossland,[7] and Gilliland, each partners at Defendant at the time, conduced Plaintiff's in-person 2017 performance review meeting. (*Id.*) Before this meeting, Defendant asked Plaintiff to complete a written self-evaluation—with 20 performance categories, each with a 1 to 5, unsatisfactory to excellent, rating scale—and Defendant, via Messrs. Dumford, Crossland, and Gilliland, shared its preliminary written evaluation of Plaintiff to Plaintiff—with the same 20 performance categories and rating scale. (*Id.* PageID 876, 879). In Plaintiff's self-evaluation, he rated himself 5 out of 5 in all 20 categories. (Doc. 22 Slone Depo. PageID 217); (*Id.* Ex. 3 PageID 603-06). In Defendant's final written evaluation of Plaintiff, Defendant rated Plaintiff as satisfactory or higher, *i.e.*, rated as a 3 or higher, in 18 of 20 categories. (Doc. 24 Dumford Dep. PageID 879); (*Id.* Ex. 2 PageID 963-65). Defendant rated Plaintiff as "Improvement Needed," *i.e.*, a rated him as a 2 in both "Treats other employees with respect" and "Modeling of Core Values." (*Id.* Ex. 2 PageID 963).

**June 2018.** At some point in mid-June 2018, Mr. Brokamp, a partner at Defendant at this time, stopped by Plaintiff's work space to give Plaintiff a quick, five-minute update on a project that Plaintiff was working on with Brokamp. (Doc. 22 Slone Dep. PageID 244-45, 471-72). Plaintiff testifies that, as Mr. Brokamp was describing the client's requests thus far, Brokamp told Plaintiff, "Bill, I know you have problems remembering things. You should get a pencil,[8] and be writing this down." (*Id.* PageID 244-45); (Doc. 24 Dumford Dep. Ex. 4 PageID 976) (Aug. 30. 2018 letter to Defendant's partners from Plaintiff)

---

[7] Earl Crossland is a registered architect who began working for Defendant in 1978 and became a partner sometime around 1982. (Doc. 25 Earl Crossland Dep. PageID 1052-53).

[8] Plaintiff testifies that Mr. Brokamp might have said "pen" instead of "pencil." (Doc. 22 Slone Dep. PageID 245).

(Plaintiff describes Mr. Brokamp's June 2018 statement as: "Bill, I know you have problems remembering things, you should be writing this down."). Mr. Brokamp denies making the statement about Plaintiff's memory. (Doc. 28 Brokamp Dep. PageID 1267-68).

Later in June 2018, Plaintiff and one of his co-workers, Teresa Mullins,[9] got into a verbal argument after Plaintiff threw away another co-worker's coffee mug. (Doc. 22 Slone Dep. PageID 232-33, 301); (Doc. 24 Dumford Dep. Ex. 5 PageID 981). (Doc. 30 Mullins Dep. PageID 1394-1405). The argument ended with Ms. Mullins telling Plaintiff that was he was "mental." (Doc. 30 Mullins Dep. PageID 1401). Plaintiff testifies that Ms. Mullins told Plaintiff was he was "mental, and everyone knows it." (Doc. 22 Slone Dep. PageID 232). Ms. Mullins denies telling Plaintiff that "everyone knows it." (Doc. 30 Mullins Dep. PageID 1403). Mr. Dumford, who acts as the Human Resources department for Defendant, investigated the incident. (Doc. 24 Dumford Dep. Ex. 6 PageID 982); (*Id.* Ex. 7 PageID 983-84). Ultimately, Plaintiff and Ms. Mullins attended a three-hour session with a prior mediator, and both felt better towards one another after the mediation session. (Doc. 22 Slone Dep. PageID 160); (Doc. 30 Mullins Dep. PageID 1406-07).

**August 2018.** Approximately a week before a previously scheduled partners' meeting, that was scheduled for August 31, 2018, Plaintiff's father requested time at that meeting to discuss the status of Plaintiff's employment. (Doc. 24 Dumford Dep. PageID 925, 930). Defendant's partners agreed to do so. (*Id.* PageID 930).

The evening before Defendant's partners' meeting, on August 30, 2018, Plaintiff emailed Defendant's partners. (*Id.* Ex. 4 PageID 966-80). The email is fifteen printed

---

[9] Teresa Mullins is a professional staff member who began working at Defendant in 2013. (Doc. 30 Teresa Mullins Dep. PageID 1377).

pages in length and, although its subject-line reads "regarding my 2017 [] Performance Evaluation," it discusses many topics and frustrations that Plaintiff has with Defendant and various employees of Defendant, including, *inter alia*, Mr. Brokamp's June 2018 statement to Plaintiff that, "Bill, I know you have problems remembering things, you should be writing this down." (*Id.* PageID 976-78).

On August 31, 2018, Defendant's partners held an off-site daylong partners' meeting. (Doc. 24 Dumford Dep. PageID 925-26). Defendant's partners, including Plaintiff's father, discussed Plaintiff's August 30, 2018 email at this meeting. (*Id.* PageID 930). After this group discussion about the email, Plaintiff's father agreed to leave the room while the remainder of Defendant's partners discussed how to move forward with Plaintiff's employment at Defendant. (*Id.* PageID 931-32). With Plaintiff's father out of the room, each of Defendant's remaining partners voted to terminate Plaintiff. (*Id.* PageID 932-33).

**September 2018.** On September 4, 2018, after Defendant's partners voted to terminate Plaintiff, Mr. Voorhis drafted a memorandum titled "VSWC Incident Report" that discussed a project that Mr. Voorhis and Plaintiff were working on. (Doc. 27 Voorhis Dep. PageID 1192); (*Id.* Ex. 8 PageID 1229).

On September 6, 2018, Defendant informed Plaintiff of his immediate termination via an in-person meeting with Messrs. Voorhis, Brokamp, and Brad Adams, and via a hand-delivered letter from Jim Voorhis. (Doc. 24 Dumford Dep. Ex. 12 PageID 988); (Doc. 27 Voorhis Dep. PageID 1195). The letter states: "Dear Bill: This letter shall confirm that you are being terminated, effective immediately, for unacceptable job performance, including but not limited to your failure to comply with the Company's core values of

building relationships with fellow employees." (Doc. 24 Dumford Dep. Ex. 12 PageID 988). Defendant decided to wait a week from the August 31, 2018 decision to terminate Plaintiff to inform him of his immediate termination so as to "take the proper technical steps related to the termination of an employee," *i.e.*, "the discontinuing of access to the file server and alarm access, and so forth." (Doc. 24 Dumford Dep. PageID 935).

**2019-2020.** On December 12, 2019, the U.S. Equal Employment Opportunity Commission issued Plaintiff his Dismissal and Notice of Rights. (Doc. 1-1). Plaintiff subsequently, and timely, filed this lawsuit against Defendant. (Doc. 1) (Initial Complaint). Plaintiff's operative complaint brings claims against Defendant under federal and state law for disability discrimination and retaliation. (Doc. 9) (Amended Complaint). Defendant moves for summary judgment on all counts. (Doc. 31).

## II.   <u>ANLAYSIS</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if its resolution affects the outcome of the suit. *Id.* The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49. On summary judgment, the court must view the evidence and draw all reasonable

inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, although the court "may consider other materials in the record," it "need consider only the cited materials." FED. R. CIV. P. 56(c)(3); *cf. Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

### a. Disability Discrimination Claims

Plaintiff's Amended Complaint alleges disability discrimination against Defendant under both federal (42 U.S.C. § 12101 et seq.) and state (Ohio Rev. Code § 4112.02(A)) statutes. (Doc. 9 ¶¶ 30-41). As Ohio's statute parallels the federal statute, the same analytical framework applies to both. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010); *Bracken v. DASCO Home Med. Equip., Inc.*, 954 F. Supp. 2d 686, 701 (S.D. Ohio 2013). The Court will analyze Plaintiff's disability discrimination claims under the federal framework, and Plaintiff's federal and state disability discrimination claims rise or fall together.

The Americans with Disabilities Act ("ADA"), as amended by the Amendments Act of 2008, prohibits employers from discriminating against—including discharging—an employee on the basis of disability. *See* 42 U.S.C. § 12112. A plaintiff can prove a claim for discrimination based on wrongful termination under the ADA through direct or circumstantial evidence.[10] *Hrdlicka v. Gen. Motors, LLC*, 59 F.4th 791, 802 (6th Cir. 2023); *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 79 (6th Cir. 2020). When analyzing an ADA discrimination claim based on circumstantial evidence, as here, courts in the Sixth Circuit

---

[10] Plaintiff does not present direct evidence or argue a direct evidence theory of disability discrimination. (Doc. 36).

use an adapted version of *McDonnell Douglas* burden-shifting framework. *Hrdlicka*, 59 F.4th at 802 (citing *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008)); *cf. McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

In such a circumstance, the plaintiff must first establish a prima facie case by demonstrating that (1) he has a disability; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) the employer knew or had reason to know of his disability; and (5) the position remained open while the employer sought other applicants, or the plaintiff was replaced. *Hrdlicka*, 59 F.4th at 802 (citing *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 395 (6th Cir. 2017)); *accord Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012); *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011). If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action. *Hrdlicka*, 59 F.4th at 802 (citing *Williams*, 847 F.3d at 395); *accord Whitfield*, 639 F.3d at 259. If the defendant does so, then the burden shifts back to the plaintiff to show that the proffered reason is merely pretext. *Hrdlicka*, 59 F.4th at 802 (citing *Williams*, 847 F.3d at 395); *accord Whitfield*, 639 F.3d at 259.

### i. Prima facie case

#### 1. Plaintiff has established an issue of material fact about whether Defendant regarded him as disabled

There are three avenues that a plaintiff can use to establish that he has a disability. *McGonegle v. Select Comfort Retail Corp.*, No. 1:19-CV-442, 2021 WL 229038, at *5 (S.D. Ohio Jan. 22, 2021); *accord Barlia v. MWI Veterinary Supply, Inc.*, 721 F. App'x 439, 445 (6th Cir. 2018). Specifically, "[t]o qualify as disabled under the ADA, an individual

must: (1) be actually disabled, *i.e.*, suffer from a physical or mental impairment that substantially limits one or more major life activities, (2) have a record of such an impairment, or (3) be regarded as having such an impairment." *McGonegle*, 2021 WL 229038, at *5 (cleaned up); *accord* 42 U.S.C. § 12102(1); *Barlia*, 721 F. App'x at 445. Plaintiff's Amended Complaint alleges both that he is actually disabled—with respect to his vision—and Defendant regarded him as disabled—specifically, Defendant regarded him as having memory problems, cognitive issues, and/or a mental disability. (Doc. 9 ¶¶ 9, 15-16, 21, 26, 31, 37). His Response in Opposition argues only that he is qualified under the ADA because Defendant regarded him as having a mental impairment. (Doc. 36 PageID 1996-99). As Plaintiff's argument relies only on the "regarded as impaired" avenue, with respect to a mental impairment, the Court's analysis will too.

"An employee is regarded as having a disability 'if the [employee] establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment[11] *whether or not the impairment limits or is perceived to limit a major life activity*.'" *Thompson v. Fresh Prod., LLC*, 985 F.3d 509, 523 (6th Cir. 2021) (alteration and emphasis in original) (footnote omitted) (quoting *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 319 (6th Cir. 2019)); *accord* 42 U.S.C. § 12102(3)(A). Unlike the "actually disabled" avenue, the "regarded as impaired" avenue "does not turn on whether the impairment limits or is perceived to limit a major life activity" or require the plaintiff "to show that the impairment results in a substantial limitation" *McGonegle*, 2021 WL 229038, at *9 (cleaned up). "Instead, the employer only needs to

---

[11] The ADA's implementing regulation defines "mental impairment" as "[a]ny mental or psychological disorder, such as an intellectual disability (formerly termed 'mental retardation'), organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2).

have known about its employee's impairment," and "the only exclusion from coverage under the ADA for regarded-as-disabled theories is that they 'shall not apply to impairments that are transitory and minor.'"[12] *Id.* (quoting 42 U.S.C. § 12102(3)(B)). "And, even on that front, the "transitory and minor limitation is an affirmative defense that the employer bears the burden of proving." *Id.* (internal quotation marks omitted) (quoting *Babb*, 942 F.3d at 319).

Plaintiff argues that three events establish that Defendant perceived him as suffering from a mental impairment: Ms. Mullins' June 2018 statement to Plaintiff that he is "mental, and everybody knows it;" Mr. Brokamp's June 2018 statement to Plaintiff that, "Bill, I know you have problems remembering things. You should get a pencil, and be writing this down;" and Mr. Voorhis' use of the word "agitated" to describe Plaintiff in the September 2018 Incident Report. (Doc. 36 PageID 1997-99). Starting with Ms. Mullins' statement, the Court is not convinced that this single statement by one of Plaintiff's co-workers is sufficient, as a matter of law, to impart the perception that Plaintiff has a mental impairment on Defendant. Ms. Mullins is not a decisionmaker at Defendant, (Doc. 22 Slone Dep. PageID 159), and the relevant inquiry at this stage, as a matter of law, is the perception of Plaintiff's employer, not of Plaintiff's co-worker, *cf. Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016) ("A prima facie case is not made out if the decisionmaker is unaware of the specifics of an employee's disabilities or restrictions, even if the decisionmaker has a general knowledge that a disability exists.").

However, Mr. Brokamp is a decisionmaker at Defendant, and Plaintiff testified that, in June 2018, Mr. Brokamp told Plaintiff, "Bill, I know you have problems remembering

---

[12] Defendant does not argue that Plaintiff's alleged perceived mental impairment constituted a minor and transitory impairment. *Compare* (Doc. 36 PageID 1999 n.11), with (Doc. 31), *and* (Doc. 38).

things. You should get a pencil, and be writing this down." (Doc. 22 Slone Dep. PageID 245); (Doc. 24 Dumford Dep. Ex. 4 PageID 966-80). Defendant disputes this, noting that Mr. Brokamp denies telling Plaintiff this. (Doc. 28 Brokamp Dep. PageID 1270-76). "For summary-judgment purposes, the 'function [of the courts] is not . . . to weigh the evidence' or 'determine the truth,' but merely to determine if there is an issue for trial." *Thompson*, 985 F.3d at 523 (alteration and omission in original) (quoting *Anderson*, 477 U.S. at 249)). If Plaintiff's testimony is believed, a jury could find that his superior perceived that he had a mental impairment, "whether or not the impairment limit[ed] or [was] perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A); *see Thompson*, 985 F.3d at 523. Plaintiff has established a factual dispute regarding whether Defendant perceived him as disabled. *See Thompson*, 985 F.3d at 523-24.

Additionally, the Court is not convinced that Mr. Voorhis' Incident Report's use of the word "agitated" to describe Plaintiff's response to the submission of various paperwork for one project supports the conclusion that Defendant perceived Plaintiff has having a mental impairment. Contrary to Plaintiff's characterization, and in the Court's opinion, the Incident Report does not state that Plaintiff was "constantly agitated." (Doc. 27 Voorhis Dep. Ex. 8 PageID 1229). Rather, and in the Court's opinion, it states that Plaintiff was agitated, *i.e.*, bothered, that an Ohio Facilities Construction Commission ("OFCC") administrator rejected of a number of Plaintiff's proposed change orders for a particular project and Mr. Voorhis requested that Plaintiff issue documentation finalizing that project post-, and despite, the OFCC's rejections of Plaintiff's work. (*Id.*); *cf. Carr v. FCA US, LLC*, No. 3:18-CV-2206, 2022 WL 992011, at *11 (N.D. Ohio Mar. 31, 2022) ("*Without more*, knowledge of an employee's stress or anger does not automatically equate to a

belief the employee is impaired, particularly as neither emotion is exclusive to those who suffer from mental impairments.") (emphasis added). Nevertheless, as the Court has already found that there is a disputed issue of material fact precluding summary judgment on the issue of whether Defendant regarded Plaintiff as disabled when it fired him in September 2018, the Court will leave this dispute for the jury to resolve.

### 2. Plaintiff has established that he was qualified

Under the ADA, a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The pertinent regulation, in turn, defines "essential functions" as "the fundamental job duties of the employment position the individual with a disability holds." 29 C.F.R. § 1630.2(n)(1).

Defendant argues that Plaintiff was not qualified for his job as an architect because he was unable to work with and get along with his co-workers. (Doc. 31 PageID 1462-63). However, Plaintiff's inability to work with others is also Defendant's stated legitimate, nondiscriminatory reason for terminating Plaintiff. (*Id.* PageID 1463-64). At this stage in the *McDonnell-Douglas* burden shifting framework, the Court cannot consider Defendant's nondiscriminatory reason for terminating Plaintiff for purposes of determining whether Plaintiff is a qualified individual at the prima facie case stage. *See Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000); *Spencer v. Nat'l City Bank*, 732 F. Supp. 2d 778, 789 (S.D. Ohio 2010). Defendant's argument improperly conflates Plaintiff's evidence presented regarding his qualifications for his job with Defendant's offered nondiscriminatory reason for Plaintiff's termination. And, for purposes of establishing a prima facie case, Plaintiff has established that he was qualified, as he has

a bachelor's degree in architecture and over 13 years' experience as a registered architect. (Doc. 22 Slone Dep. PageID 104-05); *cf.* (Doc. 25 Crossland Dep. PageID 1061) ("Yeah, I think [Plaintiff]'s always done a good technical job.").

### 3. Plaintiff suffered an adverse employment decision

Plaintiff's termination constitutes an adverse employment action.

### 4. Defendant employer knew or had reason to know of his disability

"As this is a 'regarded as disabled' case, the first and fourth prongs essentially merge as it would be illogical for defendant to unknowingly regard plaintiff as being disabled." *Zabell v. Medpace, Inc.*, No. 13-252-SJD-JGW, 2015 WL 1000424, at *3 n.11 (S.D. Ohio Mar. 5, 2015), *report and recommendation adopted*, No. 1:13-CV-252, 2015 WL 1475037 (S.D. Ohio Mar. 31, 2015). The Court, again, finds that there is a disputed issue of material fact precluding summary judgment on the issue of whether Defendant regarded Plaintiff as disabled.

### 5. Plaintiff's former position remained open while Defendant sought other applicants or Plaintiff was replaced.

With respect to the fifth element of a prima facie case, Defendant argues that "the company never sought other applicants for [Plaintiff]'s position, and in fact his job duties were divided out among the remaining members of [Defendant]." (Doc. 31 PageID 1463). Defendant does not cite anything in the record for support. Plaintiff responds that Defendant's partners discussed the need to hire additional, experienced architects at the August 31, 2018 partner's meeting. (Doc. 28 Brokamp Dep. PageID 1279-82). Plaintiff also asserts that, after Defendant terminated Plaintiff, Defendant hired Damien McDaniels, a recent graduate, and Trent DeBruin, a registered architect. (Doc. 24

Dumford Dep. PageID 824-25); (Doc. 25 Crossland Dep. PageID 1079-81). A reasonable jury, crediting Plaintiff, could believe that Defendant replaced Plaintiff with either McDaniels or, more likely given their respective credentials, DeBruin. Accordingly, submission to a jury is further justified.

### ii. Legitimate, nondiscriminatory reason and pretext

Defendant's offered legitimate, nondiscriminatory reason for terminating Plaintiff is Plaintiff's inability to work with others. (Doc. 31 PageID 1463-64). Plaintiff does not appear to challenge Defendant's production of this reason. (Doc. 36 PageID 2002). The Court finds that Defendant meets its burden of production.

A plaintiff typically demonstrate pretext in one of three ways. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008). He can show that the stated reason (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action. *Id.*; *accord Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012). The first and third ways are not viable paths here, as Plaintiff concedes known instances of interpersonal conflict and fails to establish that he is similarly situated to a non-protected employee in all relevant respects. (Doc. 36 PageID 2001-02); *cf. Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (cleaned up) (explaining that the third way to establish pretext "generally consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff."); *Riley v. PNC Bank, Nat. Ass'n*, 602 F. App'x 316, 321 (6th Cir. 2015) (internal quotation marks omitted) (explaining that, under the third way, a plaintiff must demonstrate that he is similarly situated to the non-protected employees in

all relevant respects and "[t]he comparable employees must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.")

Plaintiff thus must rely on the second way to demonstrate pretext. "A plaintiff using the second option admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal, but attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant." *Johnson*, 319 F.3d at 866 (cleaned up). Plaintiff's reliance on his August 30, 2018 email— namely, Plaintiff's acknowledgement therein that almost all of his co-workers do not like him and Mr. Brokamp's statement to Plaintiff that, "Bill, I know you have problems remembering things. You should be writing this down"—coupled with Defendant's denial that Brokamp said this to Plaintiff creates a genuine issue of fact with respect to pretext for disability discrimination. (Doc. 24 Dumford Dep. Ex. 4 PageID 973, 976-78). Although Defendant denies that Mr. Brokamp made this statement, for purposes of summary judgment, this Court must accept Plaintiff's version of events. This is "a classic he-said/[]he said situation" and "strikes the Court as exactly the type of credibility determination that the legal system assigns exclusively to a jury." *McGonegle*, 2021 WL 229038, at *12-13. Plaintiff has pointed to sufficient evidence in the record to create a material dispute of fact with respect to Defendant's offered rationale for Plaintiff's termination.

16

Consequently, as genuine issues of material fact remain, the Court will deny Defendant's motion for summary judgment as to Plaintiff's disability discrimination claims, based on a regarded-as-disabled theory, under the ADA and Ohio law.

### b. Retaliation Claims

The ADA precludes companies from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The ADA's anti-retaliation provision thus prohibits retaliation against an individual for opposing practices made unlawful by the ADA or otherwise seeking to exercise rights under the ADA. *Parker v. W. Carroll Special Sch. Dist.*, No. 21-5700, 2022 WL 2913982, at *3 (6th Cir. Mar. 14, 2022), *cert. denied*, 143 S. Ct. 751 (2023) (citing *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 696-97 (6th Cir. 2013)). "Discrimination in this context means retaliation." *Schobert v. CSX Transportation Inc.*, 504 F. Supp. 3d 753, 785 (S.D. Ohio 2020) (citing *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (en banc)).[13] When analyzing an ADA retaliation claim based on circumstantial evidence, as here, courts in the Sixth Circuit use an adapted version of *McDonnell Douglas* burden-shifting framework. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (citing *A.C. ex rel. J.C.*, 711 F.3d at 697).

Starting with the first step of that burden-shifting framework, "[t]he plaintiff bears the initial burden to establish a prima facie case of retaliation, which requires a showing

---

[13] Plaintiff's retaliation claim under Ohio law is properly analyzed under the same framework as his ADA retaliation claim. *See Sharp v. Waste Mgmt., Inc.*, 47 F. Supp. 3d 584, 599 (S.D. Ohio 2014), *aff'd sub nom. Sharp v. Profitt*, 674 F. App'x 440 (6th Cir. 2016) (citing *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1104 n.3 (6th Cir. 2008)).

that (1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Id.* (citing *A.C. ex rel. J.C.*, 711 F.3d at 697). Defendant argues that Plaintiff's retaliation claims fail because Plaintiff cannot establish a prima facie case because he did not oppose ADA-protected activity. (Doc. 31 PageID 1465-67); (Doc. 38 PageID 2019-23). Plaintiff responds that he opposed disability discrimination, which the ADA makes unlawful, and cites his August 30, 2018 email. (Doc. 36 PageID 2004-05). Plaintiff specifically cites his statements therein: regarding Plaintiff's 1998 car crash, which occurred during a time at which Plaintiff, Mr. Brokamp, and many of the current partners worked for Defendant; regarding the injuries that Plaintiff suffered as a result of that crash, including a two-week coma; about the negative, long-term stigma associated with suffering a two-week coma; that, weeks prior to the email, Brokamp directed Plaintiff to write Brokamp's oral instructions down and stated, "I know you have problems remembering things;" and that, "[a]ssuming that [Mr. Brokamp] know[s] anything about the injury or its affects [on Plaintiff] is nothing other than unfounded prejudice" and an "attack" on Plaintiff's memory and existence. (Doc. 24 Dumford Dep. Ex. 4 PageID 976-78) (alterations added).

The question is thus whether Plaintiff's sending the August 30, 2018 email to Defendant's partners constitutes the type of opposition activity protected by the ADA. *See Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1311 (6th Cir. 1989).[14]

---

[14] *Booker* "address[ed] the standard for protected activity under the anti-retaliation provision of Michigan's Elliott-Larsen Civil Rights Act (the 'ELCRA'). But the *Booker* standard applies beyond the ELCRA. The Sixth Circuit . . . ha[s] applied the *Booker* standard to federal anti-retaliation statutes, including the anti-retaliation provision of the ADA." *Hagelthorn v. Henry Ford Health Sys.*, No. 15-CV-12635, 2016 WL 7178737, at *3 (E.D. Mich. Dec. 9, 2016) (first citing *Fox v. Eagle Distributing Co., Inc.*, 510 F.3d 587, 591 (6th Cir. 2007) (applying *Booker* in defining protected activity under federal Age Discrimination in Employment Act); and then citing *McElroy v. Philips Medical Systems North America, Inc.*, 127 F. App'x 161, 171 (6th Cir. 2005)

Defendant argues that sending the email is not protected activity, as Plaintiff's email "primarily concerned a dispute over his performance review," does not "reference [ ] what he alleges was a discriminatory comment" "until page 11 of the e-mail," and "is not enough to establish an overt stand against discrimination under the ADA." (Doc. 31 PageID 1466-67). Plaintiff contends that his sending the email is protected activity as, although the email is admittedly long, it nevertheless raises a complaint about alleged disability discrimination made by one of Defendant's partners to Plaintiff about Plaintiff's mental capacity. (Doc. 36 PageID 2004-05). Based on the factual backdrop of this specific case, the Court finds that a reasonable juror could construe Plaintiff's sending of the email as protected opposition of disability discrimination. *See Bonner-Gibson v. Genesis Eng'g Grp.*, No. 3:18-CV-00298, 2019 WL 3818872, at *10 (M.D. Tenn. Aug. 14, 2019) ("Although 'a vague charge of discrimination' is not sufficient to constitute a protected activity, a plaintiff's complaint is not required to have been made with 'absolute formality, clarity, or precision.'" (quoting *Stevens v. Saint Elizabeth Med. Ctr., Inc.*, 533 F. App'x 624, 631 (6th Cir. 2013))); *cf. Crawford v. Chipotle Mexican Grill, Inc.*, 773 F. App'x 822, 829 (6th Cir. 2019) ("The governing principle from our caselaw is not that magic words must be intoned but that the language used be enough, in a specific factual context, to convey the accusation and its basis.").

Defendant next argues that Plaintiff's retaliation claims fail as Plaintiff still cannot establish a prima facie case because he cannot demonstrate that there was a causal connection between his August 30, 2018 email and his termination, as the temporal proximity between the two is insufficient to give rise to a causal inference. (Doc. 31

---

(applying *Booker* in defining protected activity under the participation clause of the anti-retaliation provision of the ADA)).

PageID 1467-68). "To show causation, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken in the absence of the protected conduct." *Kirilenko-Ison v. Bd. of Educ. of Danville InDep. Sch.*, 974 F.3d 652, 664 (6th Cir. 2020) (cleaned up). "In some circumstances, an inference of causation may arise solely from the closeness in time between the point at which an employer learns of an employee's protected activity and the point at which it takes an adverse action against that employee." *Id.*; *see Schwendeman v. Marietta City Sch.*, 436 F. Supp. 3d 1045, 1067-68 (S.D. Ohio 2020), *aff'd*, No. 20-3251, 2020 WL 7711327 (6th Cir. Dec. 14, 2020) ("Thus, unless immediate, temporal proximity must be coupled with other indicia of retaliatory conduct to give rise to a causal inference."). This matter is one such circumstance where an inference of causation due to temporal proximate is proper. *See Kirilenko-Ison*, 974 F.3d at 664; *Schwendeman*, 436 F. Supp. 3d at 1067-68. Defendant's partners voted to terminate Plaintiff on August 31, 2018, *i.e.*, one day after Plaintiff sent his August 30, 2018 email to those same partners. One day between Plaintiff's engagement in protected activity and his termination "is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

As Plaintiff has established his prima facie case of retaliation, the burden shifts to Defendant to articulate a legitimate, non-discriminatory business reason for the adverse action. Defendant has satisfied this burden by articulating Plaintiff's inability to work with others. The burden now shifts back to Plaintiff to articulate why Defendant's reason is pretextual. Similar to Plaintiff's pretext argument regarding disability discrimination,

Plaintiff's reliance on his August 30, 2018 email to Defendant's partners, coupled with Defendant's denial that Mr. Brokamp commented on Plaintiff's memory earlier in 2018 creates a genuine issue of fact with respect to pretext for retaliation under the ADA. *See* (Doc. 24 Dumford Dep. Ex. 4 PageID 973, 976-78); *cf. Mann v. XPO Logistics Freight, Inc.*, 819 F. App'x 585, 610 (10th Cir. 2020) (holding that the plaintiff presented appropriate evidence to create a genuine issue of material fact regarding pretext for her retaliation claims based on the same pretext arguments argued for her discrimination claims).

### c. Same Actor Inference

As a final matter, the Court finds that the same actor inference is not applicable at this stage of the litigation. *See* (Doc. 38 PageID 2024). "[U]nder the 'same-actor inference,' when a plaintiff is terminated by the same person who hired him with knowledge of his membership in a protected class, it is unlikely that discrimination was the reason for the discharge." *Cutcliffe v. Wright State Univ.*, No. 3:17-CV-222, 2019 WL 316909, at *8 (S.D. Ohio Jan. 24, 2019) (citing *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 464 (6th Cir. 1995)). "This general principle applies regardless of whether the class is age, race, sex, or some other protected classification." *Buhrmaster*, 61 F.3d at 464. Although the factfinder is permitted to draw this inference, the Sixth Circuit has explained that it is by no means a mandatory one, and it may be weakened by other evidence. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573 (6th Cir. 2003) (citing *Buhrmaster*, 61 F.3d at 464); *see also Gaglioti v. Levin Grp., Inc.*, 508 F. App'x 476, 483 (6th Cir. 2012) (explaining that, "as *Wexler* makes clear, the same-actor inference cannot be an independent reason to grant summary judgment where there are other disputes of

material fact").

## III. <u>**CONCLUSION**</u>

In light of the foregoing, it is hereby **ORDERED** that Defendant's Motion for

Summary Judgment (Doc. 31) is **DENIED**.

      **IT IS SO ORDERED.**             /s Michael R. Barrett
                                                Michael R. Barrett, Judge
                                                United States District Court